UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23354-CIV-WILLIAMS/SIMONTON

SAID WIGGINS,

       Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Defendant.

_____/

DISCOVERY ORDER

This matter was before the Court for a discovery hearing on September 26, 2014, based upon Plaintiff's Re-Notice of Hearing, ECF No. [36] and Defendant's Notices of Hearing, ECF Nos. [35] and [41]. The Honorable Kathleen M. Williams, the United States District Judge assigned to this case, has referred discovery matters to the undersigned Magistrate Judge, ECF No. [30]. The Notices of Hearing included disputes which had been the subject of previously filed motions. Plaintiff had filed a Motion for Protective Order, Defendant filed a Response in Opposition, and Plaintiff filed a Reply, ECF Nos. [16], [22] and [27]. Plaintiff also filed a Motion to Compel Documents, Defendant filed a Response in Opposition, and Plaintiff filed a reply, ECF Nos. [17], [28] and [31]. Defendant filed a Motion for Order for Rule 35 Physical Examination of Plaintiff, ECF No. [38], which was superseded by the Notice of Hearing on this issue, ECF No. [41].

I.      BACKGROUND

Plaintiff Said Wiggins has filed a Second Amended Complaint (hereafter referred to as the Complaint), seeking damages resulting from Defendant Allstate's alleged refusal to settle a claim made by Plaintiff for injuries arising out of an automobile

accident caused by an underinsured motorist, ECF No. [15].  According to the Complaint, Mr. Wiggins is a permitted driver under the insurance policy of Ms. Albury, who is not named in this suit.  On June 1, 2008, Mr. Wiggins was operating Ms. Albury's automobile with her permission when an underinsured motorist, Jose Sierra, collided with Plaintiff (the Accident").  There was no dispute over coverage and allegedly Plaintiff provided notice to Allstate with all document requests, evidence and medical records regarding his injuries.  According to the Complaint, Allstate did not pay Plaintiff the $10,000.00 underinsured motorist benefit owed to him under the policy, although the policy issued by Defendant included uninsured/underinsured motorist coverage in the amount of $10,000.00 per person and $20,000.00 per accident.

Plaintiff filed a Civil Remedy Notice of Insurer Violations, with an acceptance date of May 5, 2009, alleging that Allstate did not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."  Defendant asserts that at the time of the Civil Remedy Notice, Plaintiff had available $10,000.00 in PIP benefits, and the tortfeasor, Jose Sierra, had $15,000.00 in bodily injury limits, which had been offered.  That notice expired on July 3, 2009, without any payment being made or the violation being cured.  According to the March 6, 2009 demand sent to State Farm, the carrier for the tortfeasor, Plaintiff had already incurred approximately $14,455.00 in medical bills for a knee injury (without PIP setoffs applied).

Plaintiff initially filed a lawsuit in state court against Defendant seeking to recover damages arising out of the accident ("the Underlying Lawsuit").  According to the Complaint, on July 9, 2010, Plaintiff filed a Proposal for Settlement on Defendant, offering to settle the Underlying Lawsuit for $20,000.00, which Defendant did not accept.  On July 19, 2011, the jury in the underlying lawsuit entered a verdict in the amount of $41,052.25

($36,052.52.25 for past medical expenses and $5,000.00 for past non-economic damages).  On January 23, 2012, the State Circuit Court entered an additur of $55,000.00, resulting in a total verdict of $96,052.00 against Allstate.[1]  Allstate rejected the $55,000.00 additur and opted for a second trial on damages only.

After the second trial, on November 29, 2012, the jury entered a verdict in the amount of $61,052.25 against Allstate, ($36,052.25 for past medical expenses; and $20,000.00 for past damages and $5,000.00 for future damages for bodily injury, pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life).  On August 28, 2013, a cost judgment was entered against Allstate for $17,751.86.

Plaintiff filed the present action, a first party bad faith claim against Allstate based upon Allstate's failure to settle his claim in good faith.

## II.   PLAINTIFF'S DISCOVERY DISPUTE

### A.   Plaintiff's Motion for Protective Order, ECF No. [16]

Plaintiff filed a Motion for Protective Order, ECF No. [16], seeking to quash non-party subpoenas duces tecum issued by Defendant to Donna Michelson, Esq., Karen Bzdyk, Esq., and Philip D. Parrish, Esq.  The individuals were Plaintiff Wiggins' attorneys in the Underlying Lawsuit, and continue to represent him.  At the hearing, Plaintiff's counsel stated that with respect to the subpoenaed documents, he believed that all documents had been provided to the Plaintiff so that Plaintiff could produce the records in response to discovery requests he received; and that the responsive documents had either been produced or listed on a privilege log.  In addition, Plaintiff's counsel stated that the witnesses would appear at their depositions.  Defense counsel argued that if all

---

[1] The jury awarded $0 for future non-economic damages, which the Circuit Court ruled to be "clearly inadequate in light of the facts presented to the jury," *Order Granting Motion for Additur*, signed on January 23, 2012.

records had been turned over to Plaintiff and produced by Plaintiff there was no need for the witnesses to produce the records.  Therefore, the undersigned ordered Plaintiff to provide Defendant with an affidavit that confirmed this.  Since Plaintiff no longer sought to prevent the depositions, the remainder of the motion was moot.

      **B.**      **Plaintiff's Motion to Compel Documents Responsive to His First Request for Production, ECF No. [17]**

Prior to the hearing, the Parties had significantly narrowed the discovery dispute regarding these documents.  Defendant had agreed to produce the majority of documents requested upon the execution of a confidentiality agreement, which provided for the production for documents previously withheld because of proprietary and trade secrets.  In addition, Defendant has prepared an amended privilege log.

      **1.**  **Items Listed on Defendant's Privilege Log**

Plaintiff sought to compel three documents listed in Defendant's privilege log which he contended were prepared in the ordinary course of business, and which related to Allstate's decision to reject Plaintiff's demands for the policy limit.  The documents at issue were created years before a final judgment was entered in the underlying lawsuit and thus, Plaintiff contended, were subject to disclosure in response to the discovery request.

Specifically, Plaintiff sought a documents identified in Defendant's Amended Privilege Log, ECF No. [28-5], as: item AA, Bates Stamp No. 338-339; item BB, Bates Stamp No. 340-341; and item CC, Bates Stamp No. 342-343.  All are described as "Internal communication between Allstate employee, Fredi Piazza, and Home Office Counsel to seek advice of counsel regarding policy limits rejection."  Defendant objected to producing these documents on the basis of attorney-client communication, work product, and proprietary/trade secret.  The Court conducted an *in camera* review of the documents from the bench.

The Court found that these were internal business documents, with nothing to indicate that an employee was seeking legal advice nor that the documents were prepared in anticipation of a bad faith litigation.  The Court ordered that Defendant produce these documents.  Defense counsel handed the documents to Plaintiff's counsel on the record in open court.

### 2. Chapter 5 of Allstate's Claim Policy Practices and Procedures Manual

Defendant provided a copy of their Claim Policy Practices and Procedures Manual to Plaintiff, but omitted Chapter Five.  This omitted chapter deals with "claim settlement and expenses authorization," which Defendant argued contains confidential and proprietary information.  The Court conducted an *in camera* inspection from the bench of the table of contents of Chapter Five and ruled that it appeared relevant.  The Court ordered it to be produced.  Defendant handed over to Plaintiff on the record in open court, a copy of Chapter 5 of their Claim Policy Practices and Procedures Manual.

### 3. Notice of Service of Subpoenas for Production from Non-Parties dated July 10, 2014.

Defendant Allstate sought to subpoena records from Plaintiff's psychiatrist.  Plaintiff objected on the grounds that Defendant did not secure either a court order or HIPPA waiver from the Plaintiff for the release of psychiatric records prior to serving a subpoena upon Dr. Sandoval, Plaintiff's psychiatrist.  Moreover, Plaintiff argued that such records were privileged and irrelevant to issues in this lawsuit since Plaintiff is not seeking damages for any mental health issues.  Defendant argued that since Plaintiff was claiming lost wages, his future employability was at issue; and, if Plaintiff contended that emotional problems resulting from the accident impacted his ability to work, Defendant was entitled to explore this.  Moreover, Defendant stated that since Plaintiff was seeking to retry the damages in this matter, there existed the potential that Plaintiff would claim

damages for mental anguish.  At the hearing, Plaintiff's counsel clarified that he was seeking damages for lost future earnings based only on Plaintiff's knee injury that he suffered in the accident, and he did not contend that he suffered any emotional injuries that interfered with his ability to do work.  In addition, Plaintiff's claim for pain and suffering was based only on the injury to Plaintiff's knee, and he was not seeking compensation for any mental anguish or psychological problems.  Based upon these express limitations, Defendant agreed that there was no need for the psychiatric records and the issue was moot.

## III.   DEFENDANT'S CROSS NOTICE OF DISCOVERY DISPUTE

Defendant raised discovery issues with Plaintiff's objections to Allstate's First Request for Production, Plaintiff's responses to Defendant's Interrogatories, Plaintiff's privilege logs, and the medical examination of the Plaintiff, ECF Nos. [35] and [41].

### A.   Plaintiff's Privilege Logs

Defendant disputed the sufficiency of Plaintiff's privilege logs, and also contended that Plaintiff had improperly invoked work product protection for documents. Defendant argued that for the same reasons that it could not invoke work product protection with respect to its underlying materials, the Plaintiff should not be able to invoke work production protection for his corresponding materials.  Defendant argued that it needed these materials to explore Plaintiff's willingness to settle.
Plaintiff disputed that his willingness to settle was relevant, arguing that if Defendant had tendered the policy limit during the Civil Remedy Notice ("CRN") period, there could be no bad faith action.  Plaintiff also stated that the only relevant period of time with respect to Defendant's actions was the CRN period, and thus, Plaintiff's later intentions were irrelevant.

The Court directed the Parties to discuss, identify, and narrow the scope of the documents at issue in the Plaintiff's privilege logs prior to the Court conducting a future *in camera* review.  The Court ordered the Parties to file a list of these documents.  In addition, the Parties each may file a memorandum of law, 24 hours prior to the next discovery hearing, not to exceed five pages with citations to the key cases addressing the issues of privilege regarding bad faith or unwillingness to settle.

### B.      Physical Examination of Plaintiff

Defendant filed a Motion for Order for Rule 35 Physical Examination of Plaintiff, ECF No [38], which the Court struck for failure to comply with discovery procedures, ECF No. [39].  This matter was then noticed for a discovery hearing, ECF No. [41], and addressed by the Court.  Defendant requested that Plaintiff to submit to a physical examination pursuant to Federal Rule of Civil Procedure 35.  Plaintiff's counsel agreed that a physical examination was appropriate.   The Court directed the Parties to submit a proposed order for such an examination.

### C.      The Remaining Discovery Issues

Several discovery disputes concern whether Plaintiff is entitled to retry the issue of his damages in this case, or whether Plaintiff is bound by the jury verdict in the Underlying Lawsuit.  Defendant argued that a retrial of the damages in this claim would be a waste of judicial resources considering that two separate juries have decided the uninsured/underinsured motorist damages in the underlying case: one verdict was $41,052.25 and the other verdict was $61,052.25.  Plaintiff, on the other hand, argued that since the judgment in the Underlying Lawsuit was limited to the policy limit of $10,000.00, he is not bound by the excess verdict in the Underlying Lawsuit.  The Court ruled that this matter appeared to be beyond the scope of an informal discovery hearing, and should be raised in a formal motion.  As the case presently stands, the Plaintiff is

claiming the right to re-litigate all damages, and therefore discovery is proper with respect to the amount of his damages.

IV.     **CONCLUSION**

At the conclusion of the hearing, the Parties were directed to confer regarding any remaining issues and file a Notice of Hearing setting these disputes for a further discovery hearing on Friday, October 10, 2014.  It is therefore

**ORDERED AND ADJUDGED** that the Motion for Protective Order and Motion to Compel Documents, ECF Nos. [16] and [17] are granted in part as set forth within the body of this Order.

The Parties are directed to discuss, identify, and narrow the scope of the remaining issues as well as the documents at issue in the Plaintiff's privilege logs.  The Parties are ordered to file a list of these documents.

The Parties may file a memorandum of law, 24 hours prior to the next discovery hearing, not to exceed five pages with citations to the key cases addressing the issues of privilege regarding bad faith and unwillingness to settle.

**DONE AND ORDERED** at Miami, Florida, this 10th day of October, 2014.

_Andrea M. Simonton_

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE


Copies furnished via CM/ECF to:
The Honorable Kathleen M. Williams,
    United States District Judge
All counsel of record

8